Jason Crews
164 W. Laurel Ct
Gilbert, AZ 85233
602-295-1875
Jason.crews@gmail.com

☑ FILED          ___ LODGED
___ RECEIVED     ___ COPY

DEC 1 5 2022

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE DISTRICT ARIZONA

PHOENIX DIVISION

| | |
|---|---|
| JASON CREWS,<br><br>      Plaintiff,<br><br>vs.<br><br>HONEXT TAX, LLC<br>A NAVADA LIMITED LIABILITY COMPANY,<br><br>AND<br><br>MATTHEW LEVY,<br><br>      Defendants. | Case No.: **CV22-02120-PHX-SMB**<br><br>COMPLAINT FOR VIOLATIONS OF:<br><br>1.    NEGLIGENT VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]<br>2.    WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT [47 U.S.C. §227 ET SEQ.]<br><br>DEMAND FOR JURY TRIAL |

## **COMPLAINT**

### **Preliminary Statement**

1.    Plaintiff Jason Crews ("Plaintiff") brings this action under the Telephone

Consumer Protection Act ("TCPA"), 47 U.S.C § 227, a federal statute enacted in

COMPLAINT- 1

1  response to widespread public outrage about the proliferation of intrusive, nuisance

2  calling practices. See *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 745 (2012).

3      2.      The Defendants in this action Honest Tax, LLC ("Honest NV"), and

4  Matthew Levy (collectively "Defendants") orchestrated placing at least six illegal calls

5  using an Automated Telephone Dialing System ("ATDS") and an artificial or

6  prerecorded voice to the Plaintiff's telephone number.

7      3.      The Plaintiff did not provide his prior express written consent to receive the

8  telemarketing solicitations at issue.

9                                      **PARTIES**

10     4.      Plaintiff is and was a resident of Maricopa County, Arizona at all relevant

11 times.

12     5.      Defendant Honest NV is now, and at all times relevant was, a limited

13 liability company organized and existing under the laws of the State of California, with

14 its place of business in Las Angeles County, California.

15     6.      Honest NV is a "person" as the term is defined by 47 U.S.C. § 153(39).

16     7.      Defendant Honest NV owns, operates, and does business as "Action Tax

17 Group Tax Advisor Services" and "Tax Group" located at 450 Fairway Drive, #201,

18 Deerfield Beach, FL and is in the business of "help[ing] you relieve the burden of back-

19 taxes" to public. https://archive.ph/IBRte.

20     8.      At all material times, Defendants includes and included any and all parents,

21 subsidiaries, affiliates, divisions, franchises, partners, joint ventures, and organization

COMPLAINT- 2

units of any kind, predecessors, successors and assigns and their officers, directors, employees, agents, representatives and any and all other persons acting on their behalf.

9.     At all material times, each of the Defendants was the agent and employee of every other Defendant in doing the events described and was at all times acting within the purpose and scope of such agency and employment and are vicariously liable under the theory of *respondeat superior* for the actions and inactions of their employees and contractors.

10.     Matthew Levy ("Levy") is or was at the time of the phone calls complained herein the owner and manager and  CEO of Honest NV.

11.     Matthew Levy is a "person" as the term is defined by 47 U.S.C. § 153(39).

## Jurisdiction & Venue

12.     The Court has federal question subject matter jurisdiction over these TCPA claims. *Mims v. Arrow Fin. Services, LLC*, 132 S. Ct. 740 (2012).

13.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions given rise to the claim occurred in this District, as the calls to the Plaintiff were placed into this District.

14.     Defendants are subject to specific personal jurisdiction because it made telemarketing calls to the Plaintiff by directing its conduct into this District.

## Introduction

15.     This action is brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C § 227 and its implementing regulations contained in 47 C.F.R. §

COMPLAINT- 3

1  64.1200, a federal statute and related regulations enacted in response to widespread

2  public outrage about the proliferation of intrusive, nuisance calling practices. *Mims v.*

3  *Arrow Fin. Servs., LLC* 132 S. Ct. 740, 745 (2012).

4        16.    In 1991, Congress enacted the TCPA to regulate the explosive growth of

5  the automated calling industry. In so doing, Congress recognized that "[u]nrestricted

6  telemarketing,… can be an intrusive invasion of privacy [.]" Telephone Consumer

7  Protection act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

8  <u>**Factual Allegations**</u>

9  <u>**Plaintiff's Numbers**</u>

10        17.    Plaintiff incorporates by reference all prior allegations contained in this

11  Complaint.

12        18.    The phone number (602) 903-XXXX ("GV Number") belongs to the

13  Plaintiff.

14        19.    The phone number (602) 295-XXXX ("Cell Number) belongs to the

15  Plaintiff.

16        20.    The Cell Number is assigned to a cellular phone used exclusively for

17  personal residential purposes.

18        21.    The GV number is assigned to the Google Voice service and used

19  exclusively for personal residential purposes.

20        22.    The GV Number has never been given to anyone publicly, and is used

21  exclusively as a voice mail for Plaintiff's personal Cell Number.

COMPLAINT- 4

23.    Plaintiff did not consent for prerecorded or automated messages to his GV Number.

24.    Plaintiff did not consent for prerecorded or automated messages to his Cell Number.

25.    Plaintiff did not consent to telephone calls from Automated Telephone Dialing Systems.

26.    The Cell Number has been on the National Do-Not-Call registry since November 7, 2006.

27.    The GV Number has been on the National Do-Not-Call registry since June 29, 2022.

28.    The Cell number is not associated with a business.

29.    The GV number is not associated with a business.

**Calls to Plaintiff**

30.    On or about March 31, 2022, at 10:36 AM Plaintiff received a call from Defendants with caller ID (213) 766-1618 to his That call contained a pre-recorded or automated voice from "David Burrows" and the "Department of Tax Debt and Financial Settlement" and directed Plaintiff to call his "personal desk" at (83) 577-2528.

31.    This prerecorded message did not identify the company in an attempt to conceal their identity and conceal their willful and knowing violations of the TCPA.

32.    The phone number (833) 577-2528 belongs or belonged to the Defendants or a third party they enlisted to call on their behalf.

COMPLAINT- 5

33.     On or about June 14, 2022, at 4:50 pm plaintiff received a phone call with caller ID (925) 474-4288 on his Cell Phone. After the Plaintiff answered, the caller identified herself as "Michelle Nelson", and attempted pitch Defendant's tax debt settlement services.

34.     The phone number (925) 474-4288 belongs or belonged to the Defendants or a third party they enlisted to call on their behalf.

35.     Plaintiff did not consent to Michelle's telemarketing phone call.

36.     Michelle refused to provide her companies name, attempting to conceal her knowing and willful misconduct.

37.     While on the phone with Michelle, Plaintiff received another phone call with blocked caller ID.  Later review of Plaintiffs phone records show the calling phone number was (818) 201-9749.

38.     The phone number (818) 201-9749 belongs or belonged to Defendants.

39.     On or about June 14, 2022, at 4:55 pm Plaintiff received another phone call to his Cell Phone from (925) 474-4288.

40.     On or about June 14, 2022, at 5:01pm Plaintiff called (833) 577-2528, and used their automated system to be placed on their internal do-not-call list for Plaintiff's GV Number and Cell Number.

41.     On or about June 24, 2022, at 6:46 am Plaintiff received a phone call with a blocked caller ID to his GV Number. Due to the timing proximitin to Defendants other

prohibited calls, and private nature of Plaintiff's GV Number Plaintiff avers this call was placed by Defendants.

42.    On or about June 29, 2022, at 10:45 am, Plaintiff received a call from caller ID (725) 218-3607. "Travis" on Plaintiff's GV Number. Travis left a voice mail saying he had an "update" on Plaintiff's case.

43.    Plaintiff has no prior business relationship with Defendants, and no such case existed.  Plaintiff avers Travis' claims were a pretext to conceal their knowing and willful violations of the TCPA.

44.    In an effort to ascertain the Defendants' identity, Plaintiff called Travis back at (725) 218-3607 at June 29, 2022 at 10:45 am.

45.    Plaintiff spoke with Travis who said he was following up on my previous conversations, and wanted to know if Plaintiff still needed their services.  Travis declined to provide the name of the company, or any other identifiable information, but agreed to send Plaintiff an email with more information.

46.    On June 29, at 10:58 am Plaintiff received an email from tjones@honesttax.com.   The email's signature identified the sender as Travis Jones "Tax Consultant", provided "Direct" number of (725) 218-3607, an "office" number of 800-985-8970.   The email contained a PowerPoint presentation clearly identifying "Honest Tax" with a telephone number of (818) 244-4465.

47.    The attachment advertised "We are committed to helping people across the UNITED STATES resolve back tax issues with the **IRS** or the STATE they reside in."

COMPLAINT- 7

48.     On or about August 10, 2022 at 9:35 am Plaintiff called Travis asked to be placed on their internal Do-Not-Call list and requested to be sent a copy of their internal Do-Not-Call policy. Plaintiff confirmed Traivs had all the information he needed to send him the policy.

49.     Plaintiff has not received a copy of the policy.

50.     On September 6, 2022, Plaintiff emailed Defendants at info@honesttax.com requesting a copy of their internal Do-Not-Call policy, and any proof Plaintiff's consent was given to their telemarketing calls or their use of a prerecorded or automated voice.

51.     Defendants did not provide a copy of their internal DNC policy.

52.     Defendants did not provide proof consent was given to their telemarketing calls or their use of a prerecorded or automated voice or ATDS.

53.     The Plaintiff has not received a copy of the Defendant's Do-Not-Call policy and believes no such policy existed at the time of any of the solicitations. Plaintiff believes, and therefore avers, that this is because Defendant does not maintain an internal Do-Not-Call Policy at all time material hereto.

54.     The Plaintiff has not received a copy of the proof of prior consent to telemarketing and automated or prerecorded calls and believes no such consent existed. Plaintiff believes, and therefore avers, that this is because Defendant does not possess said required consent.

1    55.    The calls received by Plaintiff were sent for the purpose of encouraging the

2    purchase or rental of, or investment in, property, goods, or services as they seek to have

3    him sign up for tax resolution services.

4    56.    These calls therefore qualified as telemarketing. 47 C.F.R. §

5    64.1200(f)(12).

6    57.    Calls to Plaintiff are summarized in the table below:

| Date | Number |
| --- | --- |
| 3/31/33 | 213-766-1618 |
| 6/14/22 | 925-474-4288 |
| 6/14/22 | 818-210-9749 |
| 6/14/22 | 925-474-4288 |
| 6/24/22 | blocked |
| 6/29/22 | 725-218-3607 |

**Defendants' Use of an ATDS**

58.    The calls were conducted using an Automatic Telephone Dialing System

(ATDS). As the Supreme Court recently clarified, the key feature of an ATDS is the

capacity to store numbers to be called using a random or sequential number generator or

to produce numbers to be called using a random or sequential number generator.

*Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021).

59.    The Third Circuit recently clarified that "Congress envisioned a broad

understanding of 'equipment'" that constitutes an ATDS. It also clarified that the analysis

of whether an ATDS was used in violation of the TCPA centers around "whether the

Defendants' employ[s] [ATDS] capacities to make automated calls," *Panzarella v.*

*Navient Sols., Inc.*, 37 F.4th 867, 873, 878 (3d Cir. 2022). In so doing, it held that

COMPLAINT- 9

1  Congress intended to "ban all autodialed calls" because Congress "found autodialer

2  technology to be uniquely harmful." Id. at 879 (cleaned up).

3      60.    In enacting the ATDS prohibition, the Third Circuit cited favorably to

4  Congressional understanding "that telemarketers could transform ordinary computers into

5  autodialers through minor and inexpensive modifications," including by "relying on

6  computerized databases containing telephone numbers during their dialing campaigns."

7  Id. at 880 (cleaned up). The Third Circuit held that, in passing the TCPA's ATDS

8  prohibition, Congress intended to remedy the problems caused by callers using computer

9  software to dial numbers randomly or sequentially from a list or database. *Id.*

10     61.    The system(s) Defendants used to place the calls to Plaintiff is/are an

11 ATDS because it would be illogical to dial a number manually, have the Plaintiff answer

12 it, and only then connect it to a human being.

13     62.    Furthermore, audible pauses, clicks, and beeps, are hallmark indicia of

14 ATDS systems. It supports the inference that Defendants used an ATDS, such as one

15 which "use[s] a random [or sequential] number generator to determine the order in which

16 to pick phone numbers from a pre-produced list." *Facebook*, 141 S. Ct. at 1171 n.7.

17     63.    Other courts have held, post-Facebook, that allegations similar to those as

18 here of the absence of a relationship between the parties, and the random nature of the

19 automation device (such as the ability to randomly generate caller ID numbers), are all

20 indicia of use of a random or sequential dialing device that gives rise to the inference at

21 the pleadings stage that an ATDS was used to make the calls. *Camunas v. Nat'l*

COMPLAINT- 10

1  *Republican Senatorial Comm.*, No. 21-1005, 2021 U.S. Dist. LEXIS 100125 at *11 (E.D.

2  Pa. May 26, 2021).

3     64.    No facts exist here to support the conclusion that Defendants were calling

4  from a curated list of their past customers. By contrast to a company that dials calls en

5  masse to multiple individuals from a list of telephone numbers (as here), a company that

6  calls its existing customers utilizing an imported customer list does not place calls using

7  an ATDS because such calling uses a database targeting existing customers' information

8  rather than computer-generated tables or lists of individuals to be called. *Panzarella*, 37

9  F.4th at 881–882.

10     65.    Plaintiff is ignorant of the exact process by which the system(s) used by the

11  Defendants operate other than drawing the reasonable inference and alleging that it stores

12  or produces telephone numbers randomly or possibly sequentially based on the facts

13  ascertainable from the calls he received, as outlined above. Indeed, as at least one district

14  court explained, "The newly clarified definition of an ATDS is more relevant to a

15  summary judgment motion than at the pleading stage." *Gross v. GG Homes, Inc.*, No.

16  3:21-cv-00271-DMS-BGS, 2021 WL 2863623, at *7 (S.D. Cal. July 8, 2021); accord

17  *Miles v. Medicredit, Inc.*, No. 4:20-cv- 01186-JAR, 2021 WL 2949565 (E.D. Mo. July

18  14, 2021).

19                    **Defendants' Conduct Violates the TCPA**

20     66.    Plaintiff incorporates the foregoing allegations as if fully set forth herein.

21

COMPLAINT- 11

67. Defendants made the automated calls. They either physically programmed the automatic dialer to dial them or instructed others to do the same.

68. Defendants made at least six telemarketing calls to Plaintiff.

69. The Plaintiff never provided his consent or requested these calls.

70. Plaintiff was harmed by these calls. He was temporarily deprived of legitimate use of his phone because his phone line was tied up during the automated calls and his privacy was improperly invaded. The Plaintiff was charged for the calls. Moreover, these calls injured Plaintiff because they were frustrating, obnoxious, annoying, were a nuisance and disturbed the solitude of Plaintiff.

## Defendants' Conduct Was Knowing and Willing

71. Defendants repeatedly violated the TCPA, and their employees repeatedly tried to conceal Defendants identity in an effort to continuously flout regulations and avoid accountability.

72. Defendants knew their actions were in violation of the TCPA, and willfully continued their conduct.

## The TCPA Prohibits all Automated

## Calls To Protected Numbers

73. The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automated telephone dialing system or an artificial or prerecorded voice, … to any telephone number assigned to a,… paging service, cellular telephone service, specialized

mobile radio service, or other radio common carrier service, or any service for which the party is charged for the call." 47 U.S.C. § 227 (b)(1)(A)(iii).

74.    Congress singled out these services for special protection because Congress realized their special importance in terms of consumer privacy and therefor protected them (as is the case of cellular phones). *Barr v. Am. Ass'n of Pol. Consultants Inc.* 140 S. Ct. 2335, 2356, (2020) (Gorsuch, J. & Thomas., concurring in part and dissenting in part).

75.    According to findings by the Federal Communications Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such messages are prohibited because, as Congress found, automated or prerecorded messages are a greater nuisance and invasion of privacy than live ones, are costly, and inconvenient.

76.    The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). 47 U.S.C. § 227(b)(1)(3).

77.    These causes of action apply to users of any one of four protected services (pager, cellular, specialized mobile radio [i.e. radio telephony locator beacons or dispatch systems], or other radio common carrier service [i.e. ship-to-shore or air-to-ground]), or any service, including residential, VoIP, and landline services, for which called party is charged.  Lynn, Monarch Recovery Mgmt., Inc., 953 F. Supp. 2d 612, 623, (D. Md. 2013).

COMPLAINT- 13

78.    "Non-Emergency pre-recorded voice or autodialed calls to [the destinations enumerated in 47 U.S.C. § 227(b)(1)(A) are permissible only with the prior express consent of the called party."

79.    U.S.C. § 227(c)(2) states "No person or entity shall initiate any telephone solicitation to,... A residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government", and defines "telephone solicitation" as "The term telephone solicitation means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person,... ". U.S.C. § 227(f)(15).

80.    The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14115, ¶ 165 (2003).

81.    In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer

designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"

82.    In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 1830, 1844 (2012) (footnotes omitted).

83.    47 C.F.R. § 64.1200 extends 47 U.S.C. § 227 and establishes several delivery restrictions. It states, "No person or entity may … Except as provided… initiate any telephone call … using an automatic telephone dialing system or an artificial or prerecorded voice."

84.    47 C.F.R. § 64.1200(a)(1) specifically protects "emergency telephone line", "guest room or patient room of a hospital, health care facility, elderly home, or similar establishment", and/or "cellular telephone service". 47 C.F.R. § 64.1200(a)(2) further prohibits "Initiate, or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described,… ".

85.    The National Do-Not-Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers.    47 C.F.R. § 64.1200(c)(2).

86.    A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

87.    The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers whose numbers are on the Registry and provides a private right of action against any entity that makes those calls, or "on whose behalf" such calls are promoted. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2).

88.    47 C.F.R. § 64.1200(d) states "No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity." It goes on to establish specific "minim standards":

(1) "Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand …"

(2) "personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list. "

(3) "If a person or entity making a call for telemarketing purposes,… receives a request,… not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name,… and telephone number on the do-not-call list at the time the request is made...must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made."

(4) "A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on

whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted."

(6) "A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls."

### Personal Liability

89.     Under the TCPA, an individual such as Levy may be personally liable for the acts alleged in this Complaint pursuant to 47 U.S.C. § 217 of the TCPA, which reads, inter alia:

> [T]he act, omission, or failure of any officer, agent, or other person acting for or employed by any common carrier or user, acting within the scope of his employment, shall in every case be also deemed to be the act, omission, or failure of such carrier or user **as well as that person**.

47 U.S.C. § 217 (emphasis added).

90.     When considering individual liability under the TCPA, other Courts have agreed that an officer or individual involved in the telemarketing at issue may be personally liable under the TCPA. See, e.g. *Jackson Five Star Catering, Inc. v. Beanson*, 2013 U.S. Dist. LEXIS 159985, *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute.") (cleaned up); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415-16 (D. Md. 2011) (If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force").

COMPLAINT- 17

91.     Levy personally participated in the actions complained of by personally directing and authorizing the scripting of both the agents, selecting the numbers to be called, selecting, and orchestrating the calling strategy.

## Claims

## Count One

92.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

93.     Plaintiff received unsolicited phone calls to their cellular telephones.

94.     The calls played a pre-recorded voice advertising Defendants tax debt relief service.

95.     As a result of its unlawful conduct, Defendants invaded Plaintiff's personal privacy, causing them to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling them to recover $500 in civil fines for each violation and an injunction requiring Defendants to stop its illegal calling campaign.

96.     Multiple employees on different occasions attempted to conceal the identity of the company and continued to violate the TCPA.

97.     Defendants made the violating calls "willfully" and/or "knowingly" under 47 U.S.C. § 227(b)(3)(C).

98.     If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

1

## Count Two

2     99.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

3     100.    The telephone Number of Plaintiff is registered on the Do-Not-Call

4  Registry.

5     101.    Defendants called Plaintiff's DNC-registered telephone at least six times

6  within a twelve-month period without having their prior written consent to do so and

7  without an established business relationship.

8     102.    The foregoing acts and omissions of Defendants and/or their agents

9  constitute multiple violations of the TCPA, 47 U.S.C. § 227(c), by making telemarketing

10  solicitations to residential and wireless telephone numbers listed on the Federal

11  Government's National Do-Not-Call Registry. 47 C.F.R. § 64.1200(c)(2).

12     103.    Defendants' calls were made for a commercial purpose.

13     104.    Plaintiff is entitled to an award of at least $500 in damages for each such

14  violation. 47 U.S.C. § 227(c)(5)(B).

15     105.    If the Court finds that Defendants willfully and/or knowingly violated this

16  subsection, the court may increase the civil fine from $500 to $1500 per violation under

17  47 U.S.C. § 227(b)(3)(C).

18     106.    Plaintiff also seeks an injunction prohibiting Defendants and their agents

19  from making telemarketing solicitations until such time they have established processes

20  and controls to prevent to residential and wireless telephone numbers listed on the

21  Federal Government's National Do-Not-Call Registry.

COMPLAINT- 19

## Count Three

107.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

108.    The forgoing acts and omissions of Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making at least five calls to Plaintiff's cellphone for non-emergency purposes, to the telephone number(s) of Plaintiff using an ATDS.

109.    As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages for each and every call made to his telephone number for which he is charged for the call using an ATDS in violation of the statute, each and every call made to his cellular phone pursuant to 47 U.S.C. § 227(b)(3)(B).

110.    Plaintiff is also entitled to and does seek injunctive relief prohibiting Defendants and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf from violating the TCPA, 47 U.S.C. § 227, by making calls, except for emergency purposes, to any number using an artificial or prerecorded voice in the future.

COMPLAINT- 20

111.    If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

112.    Plaintiff also seeks injunction prohibiting all telemarketing calls from defendants and their agents until such time they have established processes and controls to preventing all calls using ATDS to all numbers protected by the TCPA without prior consent.

## Count Four

113.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

114.    By placing at least six calls to the Plaintiff's mobile phone the Defendant violated A.R.S § 44-1278 (B)(3). By their use of "any automatic terminal equipment … excludes calls to the following telephone numbers without … d) The telephone numbers maintained on a no call list …". A.R.S § 44-1278 (B)(5).

115.    By placing at least six calls to a number already on the national Do-Not-Call list, the defendant violated ARS 44-1282 (A), and are subject to a civil penalty not to exceed $1000 per violation. ARS 44-1282 (B).

## Count Five

116.    Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

COMPLAINT- 21

117. By placing at least six telemarketing calls to the Plaintiff, whose number is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, failing on at least two occasions to properly identify the caller of the company, Defendant(s), jointly and severally, violated 47 U.S.C. § 227(c)(5) by violating the implementing regulations codified in 47 C.F.R. § 64.1200(c) and (d).

118. As a result of Defendants' and/or their affiliates, agents, and/or other persons or entities acting on Defendants' behalf's violations of the TCPA, 47 U.S.C. § 227, Plaintiff is entitled to an award of $500 in damages pursuant to 47 U.S.C. § 227(b)(3)(B).

119. If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

120. Plaintiff also seeks an injunction prohibiting all telemarketing calls from Defendants until such time that Defendants and their agents have implemented processes and controls to ensure no telemarketing calls are made to numbers contained on the National Do-Not-Call list without prior express permission.

### Count Six

121. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

122. 47 C.F.R. 64.1200(d)(1) requires that Defendants maintain a written telemarketing policy, available upon demand, for maintaining a do-not-call list.

123.   Defendants failed to fulfill this requirement, resulting in violations against Plaintiff.

124.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

125.   If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

126.   Plaintiff also seeks an injunction prohibiting all telemarketing calls from Defendants until such time Defendants have trained all employees and their agents on the existence and usage of Defendants' internal do-no-call policy, and established processes and controls to insure all future employees are trained on the existence and usage of said policy, and processes and controls are established ensuring employees are able to make said policy available upon demand.

## Count Seven

127.   Plaintiff incorporates the foregoing allegations as if fully set forth herein.

128.   47 C.F.R. 64.1200(c)(1) prohibits Defendants train their personnel engaged from telemarketing outside the hours of outside " 8 a.m. or after 9 p.m".

129.   Defendants did not do so, resulting in violations against Plaintiff.

130.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

131.    If the Court finds that Defendants willfully and/or knowingly violated this subsection, the court may increase the civil fine from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

132.    Plaintiff also seeks an injunction prohibiting Defendants and their agents from making any telemarketing calls until such time they have implemented controls preventing any telemarketing outside the hours of 8 a.m. or after 9 p.m.

### Summary fo Counts

133.    By placing at least six telemarketing calls to the Plaintiff, whose cellular phone number used for residential purposes is on the Do-Not-Call registry, failing to have a written Do-Not-Call policy, and failing to maintain the Plaintiff on their Do-Not-Call list, and making at least one call with a prerecorded voice Defendants, jointly and severally, violated 47 U.S.C. § 227, 47 C.F.R. § 64.1200, and ARS 44-1282 (A).

134.    This amounts to at least twenty-three willful and knowing violations as presented in the table below.

| | Violation Counts |
|---|---|
| 47 U.S.C. § 227(b)(1)(A) | 6 |
| 47 U.S.C. § 227(b)(1)(B) | 1 |
| 47 CFR § 64.1200(a)(1) | 4 |
| 47 CFR § 64.1200(a)(2) | 4 |
| 47 CFR § 64.1200(a)(3) | 1 |
| 47 CFR § 64.1200(b)(1) | 1 |
| 47 CFR § 64.1200(b)(2) | 0 |
| 47 CFR § 64.1200(b)(3) | 1 |
| 47 CFR § 64.1200(c)(1) | 0 |
| 47 CFR § 64.1200(c)(2) | 4 |
| 47 CFR § 64.1200(d) | 1 |
| Total | 23 |

## Relief Sought

WHEREFORE, Plaintiff requests the following relief:

    A. An order declaring that Defendants' actions, as set out above, violate the TCPA;

    B. An order declaring that Defendants' actions, as set out above, violate the TCPA willfully and knowingly, and an award trebling statutory damages;

    C. An order declaring that Defendants' actions, as set out above, violate the 227(c) of the TCPA;

    D. An order declaring that Defendants' actions, as set out above, violate the 227(d) of the TCPA;

    E. An order declaring that Defendants' actions, as set out above, violate 47 C.F.R. § 64.1200(c)(1);

F. An order declaring that Defendants' actions, as set out above, violate 47 C.F.R. § 64.1200(d)(1);

G. An order declaring that Defendants' actions, as set out above, violate 47 C.F.R. § 64.1200(d)(2);

H. An order declaring that Defendants' actions, as set out above, violate A.R.S. § 44-1282 (B).

I. An injunction prohibiting Defendants and their agents from making telemarketing solicitations until such time they have established processes and controls to prevent to residential and wireless telephone numbers listed on the Federal Government's National Do-Not-Call Registry

J. An injunction prohibiting all telemarketing calls from Defendants and their agents until such time they have established processes and controls to preventing all calls using ATDS to all numbers protected by the TCPA without prior consent;

K. An injunction requiring Defendants and their agents to cease all unlawful calls without first obtaining the call recipients' express consent to receive such calls;

L. An injunction prohibiting all telemarketing calls from Defendants and their agents until such time that Defendants have implemented processes and controls to ensure no telemarketing calls are made to

numbers contained on the National Do-Not-Call list without prior express permission;

M. An injunction prohibiting all telemarketing calls from Defendants until such time Defendants have trained all employees and their agents on the existence and usage of Defendants' internal do-no-call policy, and established processes and controls to insure all future employees are trained on the existence and usage of said policy, and processes and controls are established ensuring employees are able to make said policy available upon demand;

N. An injunction prohibiting Defendants and their agents from making any telemarketing calls until such time they have implemented controls preventing any telemarketing outside the hours of 8 a.m. or after 9 p.m.;

O. Because of Defendants' violations of the TCPA, Plaintiff seeks for himself $500 in damages for each violation or—where such regulations were willfully or knowingly violated—up to $1,500 per violation, pursuant to 47 U.S.C. § 227(b)(3) or 47 U.S.C. § 227(c)(5);

P. Because of Defendants' violations of the A.R.S. § 44-1282, Plaintiff seeks for himself $1000 in damages for each violation, pursuant to A.R.S. § 44-1282 (B);

Q. An award of reasonable fees and costs;

COMPLAINT- 27

R.  Such other and further relief that the Court deems reasonable and
just.

RESPECTFULLY SUBMITTED on this December 12, 2022.

_____
Jason Crews